UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Carrie Evelyn Ellis,
        Claimant

        v.                                    Case No. 21-cv-540-SM
                                              Opinion No. 2022 DNH 063

Kilolo Kijakazi, Acting Commissioner,
Social Security Administration,
        Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Carrie Evelyn
Ellis, moves to reverse or vacate the Commissioner's decision
denying her application for Disability Insurance Benefits under
Title II of the Social Security Act.  See 42 U.S.C. §§ 423, et
seq.  The Commissioner objects and moves for an order affirming
her decision.


For the reasons discussed, claimant's motion is denied, and
the Commissioner's motion is granted.


**Factual Background**

I.   Procedural History.

In February of 2011, claimant filed an application for
Disability Insurance Benefits ("DIB"), alleging that she was

disabled and had been unable to work since September 9, 2009. She was 47 years old at the time of her alleged onset of disability and had acquired sufficient quarters of coverage to remain insured through December 31, 2014.  Thus, to be entitled to Social Security benefits, claimant must establish that she was disabled, as that term is used in the Act, on or before that date.

Claimant's 2011 application was denied and she requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ rendered an unfavorable decision, which was affirmed by the Appeals Council.  Claimant appealed to this court, after which the Commissioner filed an "assented-to" motion to remand the matter to the agency for further development of the record.  See Ellis v. Social Security Admin., No. 13-cv-412-PB (April 10, 2014).

A second hearing was held and the ALJ issued another unfavorable decision.  That decision was affirmed by the Appeals Council and claimant appealed to this court.  Again, however, the Commissioner submitted an "assented-to" motion to remand the matter to the agency for further development of the record, representing to the court that it would be assigned to a

different ALJ.  See Ellis v. Social Security Admin., No. 16-cv-221-LM (Oct. 14, 2016).

A third hearing was held on March 16, 2017.  Claimant, her attorney, an impartial vocational expert, and an independent medical expert appeared before a new ALJ, who considered claimant's applications de novo.  Approximately six weeks later, the ALJ issued her written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time from September 9, 2009 (claimant's alleged onset date) through December 31, 2014 (her date last insured).  Claimant then requested review by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 10).  In response, the Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 12).  Those motions are pending.

II.  Factual Background.

A detailed factual background can be found in claimant's
statement of facts (document no. 10-2), as well as the
Commissioner's statement of facts (document no. 13).  Those
facts relevant to the disposition of this matter are discussed
as appropriate.  At this stage, it is sufficient to note that
claimant sustained an injury to her right shoulder in November
of 2008.  While at work, she was installing a shelf when it fell
and struck her right shoulder.  She received numerous
treatments, including several surgeries, to address ongoing
shoulder pain.  She says that from the date of her alleged onset
of disability through her date last insured, she suffered from
debilitating pain and restricted movement.  She also suffered
from mild to moderate left carpal tunnel syndrome, though she
retained normal motor, sensory, and reflex function.

## Standard of Review

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if

4

supported by substantial evidence.  See 42 U.S.C. § 405(g).  See
also Irlanda Ortiz v. Secretary of Health & Human Services, 955
F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion."  Consolidated Edison Co. v. NLRB, 305
U.S. 197, 229 (1938).  Importantly, then, it is something less
than a preponderance of the evidence.  So, the possibility of
drawing two inconsistent conclusions from the evidence does not
prevent an administrative agency's finding from being supported
by substantial evidence.  See Consolo v. Federal Maritime
Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v.
Perales, 402 U.S. 389, 401 (1971).


II.  The Parties' Respective Burdens.

     An individual seeking DIB benefits is disabled under the
Act if she is unable "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Act places a heavy initial burden on the claimant to
establish the existence of a disabling impairment.  See Bowen v.
Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of
Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To

satisfy that burden, the claimant must prove, by a preponderance
of the evidence, that her impairment prevents her from
performing her former type of work.  See Manso-Pizarro v.
Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir.
1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If
the claimant demonstrates an inability to perform her previous
work, the burden shifts to the Commissioner to show that there
are other jobs in the national economy that she can perform, in
light of her age, education, and prior work experience.  See
Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2
(1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512 and 404.1560.

    In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the claimant's testimony or that of
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,
6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if
her:

        physical or mental impairment or impairments are of
        such severity that [she] is not only unable to do

[her] previous work but cannot, considering [her] age,
education, and work experience, engage in <u>any other
kind of substantial gainful work which exists in the
national economy</u>, regardless of whether such work
exists in the immediate area in which [she] lives, or
whether a specific job vacancy exists for [her], or
whether [she] would be hired if [she] applied for
work.

42 U.S.C. § 423(d)(2)(A) (emphasis supplied).  The threshold for

meeting the Act's definition of disability is, then, fairly

high.


    With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm her

decision.


**The ALJ's Findings**

    In concluding that claimant was not disabled within the

meaning of the Act, the ALJ properly employed the mandatory

five-step sequential evaluation process described in 20 C.F.R.

§ 404.1520.  <u>See generally</u> <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24

(2003).  Accordingly, she first determined that claimant had not

been engaged in substantial gainful employment during the period

from her alleged onset date (September 9, 2009) through her date

last insured (December 31, 2014).  Admin. Rec. at 1276.  Next,

the ALJ concluded that through her date last insured, the

claimant suffered from the following severe impairments: "status

post three light shoulder arthroscopic decompression surgeries,
degenerative changes of the cervical spine and left carpal
tunnel syndrome." Id. But, the ALJ determined that claimant's
impairments, whether considered alone or in combination, did not
meet or medically equal any of the impairments listed in Part
404, Subpart P, Appendix 1. Admin. Rec. at 1280. Claimant does
not object to any of those findings.

Next, the ALJ concluded that, through her date last
insured, claimant retained the residual functional capacity
("RFC") to perform the exertional demands of "light" work,
subject to the following limitations:

> [S]he is limited from lifting/carrying more than 10
> pounds with the right upper extremity and 20 pounds
> with the left upper extremity. She can sit, stand and
> walk 8-hours each during a normal workday. She can
> occasionally reach overhead with the right upper
> extremity and continuously reach with the left arm.
> She can reach in other directions without limits. She
> has no limitations on handling. She can frequently
> finger with the left hand and continuously finger with
> the right. She can frequently push/pull with both
> upper extremities. She could not crawl or climb
> ladders/ropes/scaffolds, but she can otherwise perform
> postural activities. She needs to avoid more than
> occasional exposure to vibrations, dangerous machinery
> and unprotected heights.

Admin. Rec. at 1281. In light of those restrictions, and in
reliance upon the testimony of the vocational expert, the ALJ
concluded that claimant was "capable of performing past relevant

work as a retail store manager, a cashier, an assistant manager (retail), or as a dispatcher." Id. at 1284. See also Id. at 1352 (vocational expert's testimony about claimant's work history, as well as the physical, educational, and training requirements of her prior jobs). Given that finding, the ALJ concluded that, "The claimant was not under a disability, as defined in the Social Security Act, at any time from September 9, 2009, the alleged onset date, through December 31, 2014, the date last insured." Id. at 1284.

## Discussion

Both of the government's earlier assented-to motions to remand appear to have been prompted, at least in part, by the original ALJ's repeated failure to address claimant's assertion that she suffers from complex regional pain syndrome. That error was remedied by the ALJ who presided over claimant's third administrative hearing.

Nevertheless, claimant repeats her assertion that the ALJ failed to properly recognize that she suffers from complex regional pain syndrome and challenges the ALJ's determination that she retained the capacity to perform a range of light work. Specifically, claimant takes issue with the weight the ALJ

ascribed to the testimony of various medical opinions in the
record.

Claimant's medical history is fairly lengthy and the
administrative record is substantial (at more than 1,600 pages).
But, claimant focuses almost exclusively on the opinions
rendered by two medical professionals: (1) Ira Parsons, M.D.,
claimant's treating surgeon; and (2) John F. Kwock, M.D., the
non-examining orthopedic surgeon who testified at the
administrative hearing as a medical expert.  In claimant's brief
argument, which is set forth almost entirely in four paragraphs,
she asserts that:

> The ALJ relied on the opinion of Dr. Kwok [sic] in
> finding that the Plaintiff did not have complex
> regional pain syndrome or some variant thereof (AR at
> 1279).  Of note, Dr. Kwok testified that during the
> course of his entire career, he had NEVER (emphasis
> added) diagnosed a patient with complex regional pain
> syndrome (AR at 1340).  That despite having several
> patients whose pain he could not determine any other
> explanation for (AR at 1340, 1341).
>
> The medical expert was also not familiar with the
> diagnosis provided by the Plaintiff's treating surgeon
> Ira Parsons, MD of "failure in situ" with regard to
> her right rotator cuff being structurally intact but
> permanently functionally deficient (AR at 1336, 1337,
> 1573).
>
> All of the medical providers who actually examined the
> Plaintiff noted her pain level and the difficulty she
> had with movement of the right upper extremity (AR at
> 238, 904, 932).  The ALJ appears to have afforded
> lesser weight to the opinion of Ira Parsons, MD

because he was advocating on behalf of the Plaintiff
being found eligible for disability benefits (AR at
1282, 1332, 1333).  Sustaining such Helleresque logic
would be contrary to public policy, where the opinion
of a medical care provider with an extensive history
with their patient proffers evidence of the disability
is discounted because it argues too strongly in favor
of disability.

At the hearing the Plaintiff testified that: she had
trouble performing fine motor skills with her dominate
hand; trouble writing; trouble lifting; problems doing
basic household activities/chores; limitations in her
range of motion; and challenges with some self-care
activities (AR at 1309, 1313, 1314, 1315).

Claimant's Memorandum (document no. 10-1) at 4.  Claimant then

concludes by asserting that, "The decision of the ALJ that the

Plaintiff could engage in a limited range of light duty work is

not supported by substantial evidence."  Id.  The court

disagrees.


No one doubts that claimant suffers from chronic shoulder

pain.  The question presented is whether the ALJ sustainably

concluded that claimant's pain did not preclude her from

engaging in her past relevant work.  On that subject, the

professional opinions of Dr. Parsons and Dr. Kwock were, to be

sure, differing.  But, the ALJ more than adequately explained

her decision to afford Dr. Kwock's opinions greater weight than

those of Dr. Parsons.  See generally Admin. Rec. at 1282-83.

First, she noted that several of Dr. Parsons' opinions are not

supported by objective testing or observation and, instead, rely largely on claimant's subjective reports of discomfort.  The ALJ also noted inconsistencies in Dr. Parsons' opinions including, for example, his various views on whether claimant suffered from any limitations in her ability to stand/walk during the workday. Compare Admin. Rec. at 904-909, Medical Source Statement of Ability to do Work-Related Activities dated 2/3/12 (opining that claimant could walk a block at a reasonable pace and perform activities like shopping, and acknowledging that claimant's "lower extremities [are] not involved," but opining that she could stand or walk for only two hours during an 8-hour workday) with Id. at 1596-1601, Medical Source Statement of Ability to do Work-Related Activities dated 12/2/16 (opining that limitations on claimant's ability to sit/stand/walk during the workday were "not applicable").[1]

The ALJ also shared Dr. Kwock's opinion that Dr. Parsons had become somewhat invested in claimant's efforts to secure DIB benefits.  See Admin Rec. at 1283 (acknowledging Dr. Kwock's "impression that Dr. Parsons has transcended to the role of

---

[1]     As claimant notes, Dr. Kwock was not provided with a copy of Dr. Parson's 2016 Medical Source Statement.  But, the opinions contained in that statement were reported nearly two years after claimant's date last insured.  And, as importantly, claimant has not shown that she suffered any prejudice from Dr. Kwock's inability to review those opinions.

advocate for [claimant]"). <u>See also</u> <u>Id</u>. at 1332-33 (Dr. Kwock's explanation for the basis of that opinion).

Additionally, the ALJ found persuasive Dr. Kwock's observation that even prior to claimant's first shoulder surgery, radiological studies showed "very little pathology." And, Dr. Kwock noted that following that first surgery, there was "<u>no</u> evidence of pathology." <u>Id</u>. at 1335 (emphasis supplied). <u>See also</u> <u>Id</u>. ("And so, from my reading of the record, there was little pathology to begin with. There appears to have been no complications as far as these operative procedures are concerned. Even the operating surgeon, at this point, will say that, as far as he is concerned, he feels that the operative results are adequate and he is at a loss to explain the continuous symptoms."). <u>See generally</u> Admin. Rec. at 937-38, Referral Letter from Dr. Parsons to Dr. Warner dated March 14, 2012 (outlining claimant's history of medical and surgical treatments, noting that lack of any pathology, and stating that "I am hard pressed to explain her pain.").

Turning to claimant's assertion that she suffers from complex regional pain syndrome, the ALJ found persuasive Dr. Kwock's rebuttal of Dr. Parson's opinion that claimant suffers from that condition. <u>See</u> Admin. Rec. at 1328-29, 1340-50

(discussing, in detail, the criteria established by the American
College of Rheumatology for making a diagnosis of complex
regional pain syndrome and explaining why he believes that
claimant's chronic shoulder pain and possible shoulder swelling
are, standing alone, insufficient to meet the diagnostic
criteria).  As noted in a Social Security Ruling on this topic,
a diagnosis of complex regional pain syndrome typically follows
when a patient presents with at least some <u>objective medical
signs or symptoms</u>:

> A diagnosis of RSDS/CRPS requires the presence of
> complaints of persistent, intense pain that results in
> impaired mobility of the affected region.  The complaints
> of pain are associated with:
>
> > Swelling;
> >
> > Autonomic instability - seen as changes in skin color
> > or texture, changes in sweating (decreased or
> > excessive sweating), skin temperature changes, or
> > abnormal pilomotor erection (gooseflesh);
> >
> > Abnormal hair or nail growth (growth can be either too
> > slow or too fast);
> >
> > Osteoporosis; or
> >
> > Involuntary movements of the affected region of the
> > initial injury.
>
> Progression of the clinical disorder is marked by worsening
> of a previously identified finding, or the manifestation of
> additional abnormal changes in the skin, nails, muscles,
> joints, ligaments, and bones of the affected region.

Titles II & XVI: Evaluating Cases Involving Reflex Sympathetic
Dystrophy Syndrome/Complex Reg'l Pain Syndrome, SSR 03-2P
(S.S.A. Oct. 20, 2003).

Here, the ALJ found persuasive Dr. Kwock's opinion that
"outside of the very subjective complaints, such as weakness,
the pain, things that cannot be measured or observed, we don't
have any observable changes, the documentable changes to make
this diagnosis."  Id. at 1345.  See also Id. at 1343-44
(summarizing the criteria generally accepted for a diagnosis of
complex regional pain syndrome – almost all of which are absent
from the record, except claimant's subjective complaints).

Finally, although not argued by claimant, the court notes
that the ALJ adequately explained her decision to afford
"significant weight" to the opinions of Dr. Salt (the non-
examining psychologist) and, to a limited extent, those of
Jonathan Jaffe, M.D. (the non-examining state agency physician).
Similarly, she adequately explained her decision to afford less
weight to the other medical opinions in the record – including
those of Dr. Parsons.  See Admin. Rec. at 1282-83.

Here, as in so many Social Security appeals, there is
medical evidence in the record both supporting and undermining

15

claimant's asserted disability.  On balance, however, there is
more than adequate evidence to sustain the ALJ's adverse
disability determination.

### Conclusion

Judicial review of the ALJ's decision is both limited and
deferential.  This court is not empowered to consider claimant's
application de novo, nor may it undertake an independent
assessment of whether she is disabled under the Act.
Consequently, the issue before the court is not whether it
believes claimant is disabled.  Rather, the permissible inquiry
is "limited to determining whether the ALJ deployed the proper
legal standards and found facts upon the proper quantum of
evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).
Provided the ALJ's findings are properly supported by
substantial evidence - as they are in this case - the court must
sustain those findings even when there may also be substantial
evidence supporting the contrary position.  Such is the nature
of judicial review of disability benefit determinations.  See,
e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d
529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's]
conclusion, even if the record arguably could justify a
different conclusion, so long as it is supported by substantial
evidence."); Rodriguez v. Secretary of Health & Human Services,

647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the
[Commissioner's] findings in this case if a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the
arguments advanced by both the Commissioner and the claimant,
the court concludes that there plainly is substantial evidence
in the record to support the ALJ's determination that claimant
was not disabled, as that term is used in the Act, at any time
prior to her date last insured (December 31, 2014).  The ALJ's
determination of claimant's RFC (as fully supported by Dr.
Kwock's testimony, see Admin. Rec. at 1329-31), her stated
reasons for crediting some medical opinions while discounting
others, and her analysis of claimant's subjective allegations of
disabling symptoms are well-reasoned and supported by
substantial evidence.

For the foregoing reasons, as well as those set forth in
the Commissioner's legal memorandum, claimant's motion to
reverse the decision of the Commissioner (**document no. 10**) is
denied, and the Commissioner's motion to affirm her decision
(**document no. 12**) is granted.  The Clerk of the Court shall
enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

May 11, 2022

cc:  Counsel of Record